IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

DIANE WASINGER, )
)
        Plaintiff, )
)
vs. ) Case No. 16-00682-CV-S-ODS
)
NANCY A. BERRYHILL,[1] )
Acting Commissioner of Social Security, )
)
        Defendant. )

ORDER AND OPINION AFFIRMING
COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's appeal of the Commissioner of Social Security's final decision denying her application for disability insurance benefits and supplemental social security income. The Commissioner's decision is affirmed.

**I. STANDARD OF REVIEW**

The Court's review of the Commissioner's decision is limited to a determination whether the decision is "supported by substantial evidence on the record as a whole. Substantial evidence is less than a preponderance but…enough that a reasonable mind would find it adequate to support the conclusion." *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015) (citations omitted). "As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because we would have decided the case differently." *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) (citation omitted). Though advantageous to the Commissioner, this standard also requires the Court consider evidence that fairly detracts from the final decision. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2015) (citation omitted). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for former Acting Commissioner Carolyn A. Colvin as the Defendant in this suit.

relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Gragg v. Astrue*, 615 F.3d 932, 938 (8th Cir. 2010).

## II.  BACKGROUND

Plaintiff was born in 1962, and has a bachelor's degree in pharmacy.  R. at 513-14.  She previously worked as a pharmacist.  R. at 500, 513.  In April 2010, Plaintiff applied for disability insurance benefits and supplemental social security income, alleging an onset date of March 23, 2009.  R. at 17.  Her initial application was denied, but this Court reversed and remanded for further proceedings.  Case No. 12-cv-06110-ODS, Doc. #13.

Upon remand, a second hearing was held before an administrative law judge ("ALJ") in January 2014.  R. at 509-38.  In March 2014, the ALJ issued her decision, finding Plaintiff was not disabled.  R. at 490-508.  Plaintiff appealed the decision to the Appeals Council, which denied her appeal.  R. at 481.  The ALJ found Plaintiff had the severe impairments of anxiety, panic disorder, bipolar disorder, and depression.  R. at 492.  The ALJ determined Plaintiff had the following residual functional capacity ("RFC"):

> [P]erform a full range of work at all exertional levels but with the following nonexertional limitations:  limited to simple, routine, repetitive work tasks, involving no fast-paced production requirements and only simple, work-related decisions, with few, if any workplace changes.  She can tolerate no public interaction, and she is limited to occasional supervision.  She can work around coworkers throughout the day, but she is limited to occasional interaction with coworkers.

R. at 496.  Based upon the RFC and the Vocational Expert's ("VE") testimony, the ALJ concluded Plaintiff could work as an industrial cleaner, order filler, garment sorter, or retail marker.  R. at 501.  Plaintiff now appeals the ALJ's decision to this Court.

## III.  DISCUSSION

Plaintiff argues the RFC is not supported by medical evidence in the record, the ALJ erroneously rejected medical opinions in the record, and the ALJ improperly assessed Plaintiff's credibility.

2

(A) Plaintiff's RFC

Plaintiff argues the ALJ erred in giving "little" weight to "each and every medical opinion of record," and therefore, the RFC is not supported by medical evidence. While "a claimant's RFC is a medical question…in evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively." *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007). The ALJ must base the RFC on "all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). One's RFC is the "most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1). Further, the ALJ is not required to rely on opinion evidence in determining Plaintiff's RFC. *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011).

The ALJ properly considered the medical evidence in formulating Plaintiff's RFC. The ALJ gave "little" or "some" weight to medical opinions in the record, but the RFC incorporates limitations consistent with evidence in the record. As the Court explains below, the ALJ did not err in weighing medical opinions of Plaintiff's treating physician and psychiatrist. Plaintiff's RFC is drawn from medical sources despite the weight given each opinion, and the RFC assessment is "ultimately an administrative determination reserved to the Commissioner." *Cox*, 495 F.3d at 619-20 (citing 20 C.F.R. §§ 416.927(e)(2), 416.946).

Plaintiff also argues the ALJ had a duty to further develop the record by ordering a consultative exam. The ALJ does not "have to seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped." *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). Rather, "the ALJ is required to order medical examinations and tests *only if* the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *Martise*, 641 F.3d at 926-27 (internal citations and quotations omitted) (emphasis added).

Plaintiff does not identify a crucial issue that is underdeveloped in the record. Plaintiff's RFC is supported by the record as a whole, and the ALJ is not required to order a consultative exam in search of an opinion on which to base Plaintiff's RFC determination. Furthermore, it is Plaintiff's burden to prove her impairment meets or equals a listing. *See Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004) (citation

3

omitted); *see also* 20 C.F.R. §§ 404.1512, 416.912.  Accordingly, the Court finds the ALJ did not err in failing to order a consultative exam.

Finally, Plaintiff argues the RFC does not account for Plaintiff's moderate difficulties in maintaining concentration, persistence, or pace.  The ALJ noted Plaintiff's moderate difficulties in maintaining concentration, persistence, or pace.  R. at 495.  The RFC limited Plaintiff to "simple, routine, repetitive work tasks, involving no fast-paced production requirements and only simple, work-related decisions, with few, if any workplace changes."  R. at 496.  Plaintiff acknowledges the RFC's limitation on pace by restricting fast-paced production requirements, but argues the ALJ failed to account for difficulties in maintaining concentration.  Although Plaintiff reports frustration with the tasks, she is able to perform daily household tasks, shop three times a week, and manage her money.  R. at 167.  She also engages in hobbies such as gardening, watching television, and reading.  R. at 168.  Moreover, a mental residual functional capacity assessment completed by Plaintiff's treating psychiatrist in December 2011 indicates Plaintiff's limitations are slight.  R. at 460-62.  Based on the record, the RFC's limitation to "simple, routine, repetitive" tasks appropriately captures Plaintiff's moderate difficulties in maintaining concentration, persistence, or pace.  *See Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001) (finding "simple, repetitive, routine tasks" captures difficulties in concentration, persistence, or pace).  Accordingly, the Court finds Plaintiff's RFC accounts for Plaintiff's moderate difficulties in concentration, persistence, or pace, and Plaintiff's RFC is supported by the record.

(B) Medical Opinions

Plaintiff contends the ALJ erred in giving little weight to the medical opinions of Plaintiff's treating psychiatrist and physician.  Generally, a treating physician's opinion is given more weight than other sources in a disability proceeding.  20 C.F.R. § 404.1527(c)(2).  However, a treating physician's opinion may be disregarded if it is unsupported by clinical or other data or is contrary to the weight of the remaining evidence in the record.  *See Anderson*, 696 F.3d at 793-94; *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996).

(i) Dr. Teresa Varanka

In February 2011, Dr. Teresa Varanka ("Varanka"), Plaintiff's treating psychiatrist, opined Plaintiff had marked limitations in her ability to maintain attention and concentration, perform activities within a schedule, maintain regular attendance, interact with the general public, and respond appropriately to changes in work settings, and extreme limitations in her ability to work at a consistent pace and complete a normal workday. R. at 446-52, 499. The ALJ gave this opinion little weight because Plaintiff did not require consistent treatment or counseling sessions, Varanka's opinion was inconsistent with her treatment notes, and Plaintiff did not require mental health hospitalizations after a December 2009 suicide attempt. In December 2011, Varanka opined Plaintiff's symptoms had improved as she only had marked limitations in her ability to maintain concentration, persistence, or pace, and repeated episodes of decompensation. R. at 463. Also in December 2011, Varanka opined Plaintiff had "none" or "slight" limitations in understanding and memory, sustained concentration and persistence, social interaction, and adaptation. R. at 460-62.[2] The ALJ gave this opinion "some weight" because it showed improvement in Plaintiff's condition, and noted Plaintiff did not require specialized mental health treatment after June 2011. R. at 499.

The ALJ properly weighed Varanka's opinions. Varanka's treatment notes indicate Plaintiff had multiple visits, but each session was of limited duration and Plaintiff did not require sustained counseling sessions. R. at 374- 380. Nor did Plaintiff require increased medications in Varanka's opinion. R. at 453-58. Varanka's December 2011 notes indicate a reduction in Plaintiff's limitations. R. at 460-62. The ALJ properly gave this opinion some weight because it demonstrated improvements in Plaintiff's condition during the treatment period, but the improvements were not consistent with a marked limitation in Plaintiff's ability to complete a workday or workweek. R. at 499. Varanka further noted marked limitations due to repeated episodes of decompensation, but the record does not contain an episode of decompensation beyond a single episode

---

[2] Varanka's mental RFC noted a "marked" limitation in Plaintiff's ability to complete a normal workday and workweek without interruptions from psychologically based symptoms. R. at 461. As the ALJ noted, such a determination is inconsistent with other limitations noted by Varanka. R. 499.

5

involving Plaintiff's December 2009 hospitalization. R. at 463. Given the inconsistencies in Varanka's treatment notes and improvement in Plaintiff's condition as evidenced by the record, the ALJ did not err in weighing Varanka's opinions.

(ii) Dr. Dea Campbell

Plaintiff's treating physician, Dr. Dea Campbell ("Campbell"), completed a mental residual functional capacity assessment and a mental impairment evaluation in January 2012. She opined Plaintiff had marked or extreme limitations in all areas of understanding and memory, sustained concentration and persistence, social interaction, and adaptation, and repeated episodes of decompensation. R. at 467-73. Campbell also submitted two letters, dated January 17, 2012 and January 18, 2012 respectively, in which she stated Plaintiff could not work in a "normal, stressful work environment," and did not "have the ability to complete a normal workday and workweek without interruptions for any significant period of time." R. at 474-476.[3] The ALJ also received testimony from Campbell during the hearing in which Campbell detailed several outbursts by Plaintiff and testified to Plaintiff's emotional instability. R. at 527-33.

The ALJ gave Campbell's opinions little weight for multiple reasons. The ALJ first noted the "mixed doctor/significant other" relationship that caused her to "doubt the reliability" of Campbell's opinions. R. at 500. While Plaintiff represents herself as a friend of Campbell's, the record indicates the two have lived together since 2008, and Plaintiff describes Campbell as her "significant other." R. at 366. Whether Plaintiff and Campbell are significant others or not, the ALJ may discount testimony of a household member who may profit from any benefits Plaintiff may obtain. *See Ownbey v. Shalala*, 5 F.3d 342, 345 (8th Cir. 1993).

The ALJ further discounted Campbell's opinions because Campbell is not a mental health specialist, and she was not licensed at the time of her testimony. R. at 500. Plaintiff objects to the ALJ's consideration of Campbell's status as a licensed

---

[3] The Court also notes Campbell's January 2012 form indicates her belief that Plaintiff became disabled on March 23, 2009. R. at 467. This is the exact date also alleged in Plaintiff's application. While Campbell has apparently been Plaintiff's treating physician since 2004, the record does not contain medical records from Campbell prior to August 2009. R. at 803.

6

physician, but the ALJ considered and rejected Campbell's opinions, made when licensed, because her opinions were inconsistent with the evidence in the record. *Id.* The ALJ also noted Campbell prescribed Plaintiff 120 capsules of Xanax in early January 2010, shortly after Plaintiff's December 2009 attempted suicide in which she overdosed on Xanax. R. at 275, 802. Moreover, Campbell repeatedly noted Plaintiff was oriented with normal mood and affect, findings that are inconsistent with her opinions. R. at 690, 692, 695, 698, 700, 703, 705. Given Campbell's financial interest in Plaintiff's recovery of benefits and inconsistencies in the record, the ALJ did not err in giving little weight to Campbell's opinions.

### (C) Plaintiff's Credibility

Plaintiff also maintains the ALJ erred in evaluating her credibility. The familiar standard for analyzing a claimant's subjective complaints is set forth in *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984):

> While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced. The adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them.
>
> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
> 1. The claimant's daily activities;
> 2. the duration, frequency and intensity of the pain;
> 3. precipitating and aggravating factors;
> 4. dosage, effectiveness and side effects of medication;
> 5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations. Subjective

complaints may be discounted if there are inconsistencies in the evidence as a whole.

*Id.* at 1322. The ALJ "need not explicitly discuss each *Polaski* factor...[t]he ALJ need only acknowledge and consider those factors before discounting a claimant's subjective complaints." *Eichelberger v. Barnhart*, 390 F.3d 584, 590 (8th Cir. 2004) (citations omitted); *see also Samons v. Apfel*, 497 F.3d 813, 820 (8th Cir. 2007).

The ALJ reviewed the medical evidence and found Plaintiff's subjective complaints were not "entirely credible" given the inconsistencies in the record. R. at 497. Plaintiff alleged a disability onset date of March 2009, but testified that she volunteered at a weekend clinic for "about three to six months" sometime in 2009. R. at 636.[4] Although Plaintiff alleges she was disabled for most of 2009, she wrote prescriptions, looked up drug information, copied charts, answered phones, and performed general administrative tasks while volunteering at the clinic. *Id.*

The ALJ also noted inconsistencies in the circumstances surrounding Plaintiff's December 2009 suicide attempt in which she stated she overdosed on Xanax. R. at 360-72. Plaintiff told first responders she took an entire bottle of Xanax. R. at 364. After stabilizing in the hospital, Plaintiff denied attempting suicide, instead stating she was tired from a long trip to Texas and wanted to get some sleep. R. at 366. The record indicates she took only two Xanax pills. R. at 368. Plaintiff was doing "better" in her own words after this hospitalization stay. R. at 366. While Plaintiff's subjective complaints continued after December 2009, the record does not indicate she required further hospitalization, had suicidal ideations, or otherwise had periods of decompensation.

Finally, the ALJ found Plaintiff was not credible based on the evidence in the record and noted inconsistencies in Plaintiff's statements and treatment. The Court will not substitute its judgment for that of the ALJ. *See Baldwin v. Barnhart*, 349 F.3d 549, 558 (8th Cir. 2003) (stating "[t]he credibility of a claimant's subjective testimony is

---

[4] Varanka's treatment notes from a September 2, 2009 visit establish Plaintiff was "working in the weekend clinic" at that time. R. at 376. The ALJ questioned Plaintiff about this work during the hearing, but Plaintiff was not able to give specifics about when she "worked" or volunteered at the clinic. R. 636.

8

primarily for the ALJ to decide, not the courts."). The Court finds the ALJ did not err in analyzing Plaintiff's credibility.

## IV.  CONCLUSION

Because substantial evidence in the record supports the ALJ's decision, the Commissioner's final decision is affirmed.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE: May 23, 2017    UNITED STATES DISTRICT COURT